

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FRANK "DOE,"**
███████
Norristown, PA 19401,

                Plaintiff,

    v.

**WM OPERATING, LLC, d/b/a
MEADOWVIEW REHABILITATION
AND NURSING CENTER,**
9209 Ridge Pike,
Philadelphia, PA 19128,

and

199 Community Drive,
Great Neck, NY 11021;

**REST HAVEN CARE CORP. d/b/a REST
HAVEN-WHITEMARSH NURSING
CENTER,**
1320 Two Penn Center Plaza,
Philadelphia, PA 19102;

**REST HAVEN NURSING CENTER
(WHITEMARSH), INC.,**
c/o CT Corporation System,
1515 Market Street,
Philadelphia, PA 19103;

**PREMIER HEALTHCARE
MANAGEMENT, LLC,**
199 Community Drive,
Great Neck, NY 11021;

and

**JOHN CHAPMAN,**
9209 Ridge Pike,
Philadelphia, PA 19128,

                Defendants

CASE NO. _____

CASE NO.    17    2204

JURY TRIAL DEMANDED (8)

## **COMPLAINT**

**PARTIES**

1.　　Plaintiff, Frank "Doe" (herein, "Plaintiff" or "Doe")[1], is an adult individual who resides at

　　　　████████████, Norristown, Pennsylvania 19401.

2.　　Doe is a gay male.

3.　　At all times relevant hereto, Doe was an employee of Defendant, WM Operating LLC d/b/a

　　　　Meadowview Rehabilitation and Nursing Center, a corporation organized and existing under

　　　　the laws of the Commonwealth of Pennsylvania, with a principal place of business and

　　　　registered office address recorded with the Corporation Bureau of the Pennsylvania

　　　　Department of State as "9209 Ridge Pike, Philadelphia, PA 19128."

4.　　On May 7, 2015, the organizer of Defendant, WM Operating LLC d/b/a Meadowview

　　　　Rehabilitation and Nursing Center, filed a Certificate of Organization for this Defendant and

　　　　identified the "County" for the Commercial Registered Officer Provider as "Philadelphia."

5.　　On August 6, 2015, the Chief Operating Officer ("COO") of WM Operating LLC d/b/a

　　　　Meadowview Rehabilitation and Nursing Center, Lisa Sofia, filed an Application for

　　　　Registration of Fictitious Name for Meadowview Rehabilitation and Nursing Center with the

　　　　Pennsylvania Department of State.  Sofia identified on the Application that the principal

　　　　office address of Defendant, WM Operating LLC d/b/a Meadowview Rehabilitation and

　　　　Nursing Center, was "9209 Ridge Pike, Philadelphia, PA 19128," and identified on the

　　　　Application that the "County" was "Philadelphia."

6.　　At all times relevant hereto, Sofia was and currently is also the Chief Executive Officer

　　　　("CEO") of Defendant, Premier Healthcare Management, LLC.

---

[1] Plaintiff's name is kept anonymous pursuant to Doe v. Megless, 654 F.3d 404 (3d Cir. 2011), and Doe v. Borough of Morrisville, 130 F.R.D. 612 (E.D. Pa. 1990), on account of the risk that Plaintiff will face further discrimination if his sexual orientation is revealed to the public.

7.     Defendant, Premier Healthcare Management, LLC, owns and operates Meadowview Rehabilitation and Nursing Center, as one of Premier Healthcare Management, LLC's facilities.

8.     Defendant, Premier Healthcare Management, LLC, also owns and operates a second rehabilitation center, located at 8301 Roosevelt Boulevard, Philadelphia PA 19152, in Philadelphia County.

9.     At all times relevant hereto, Sofia was and currently is also the President and Chief Executive Officer ("CEO") of the rehabilitation center located at 8301 Roosevelt Boulevard, Philadelphia PA 19152, in Philadelphia County.

10.    The entrance of Defendant, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, is located right on top of the Philadelphia/Montgomery County line.  To access the Defendants' entrance, you must enter Philadelphia County.

11.    On the Philadelphia County side of the Philadelphia/Montgomery County line, Defendant, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, staked a sign into the ground which, at all times relevant hereto, read, and continues to read, "Meadowview Rehabilitation and Nursing Center," along with an arrow.

12.    On the Philadelphia County side of the Philadelphia/Montgomery County Line, Defendant, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, posted and continues to display a metal sign screwed into the road sign, "Right Lane Must Turn Right," bearing the Defendant, WM Operating LLC d/b/a Meadowview Rehabilitation and Nursing Center's corporate logo, "M," and the language, "Meadowview Rehabilitation and Nursing Center.  Turn Right at Northwestern Ave."

13.    At all times relevant hereto, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, marketed itself to residents of the City of Philadelphia by holding itself out

as being in the City of Philadelphia, specifically to gain business from residents of the City of Philadelphia.

14. At all times relevant hereto, WM Operating LLC d/b/a Meadowview Rehabilitation and Nursing Center, held itself out to current residents and patients on the Social Activities Calendar each and every month as being located in "Philadelphia, PA."

15. At all times relevant hereto, WM Operating LLC d/b/a Meadowview Rehabilitation and Nursing Center, and the Plaintiff, conducted social activities for current residents and patients in the City and County of Philadelphia.

16. Plaintiff, within the scope of his authority and in his role as Activities Director, walked Meadowview residents and patients from Defendants' facility at 9209 Ridge Pike, Philadelphia, PA 19128, across Northwestern Avenue, which is the Philadelphia/Montgomery County Line, to the Friendly's restaurant located at 9155 Ridge Pike, Philadelphia, PA 19128, in the City and County of Philadelphia.

17. Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., is the owner of the registered fictitious name, "Andorra Woods Healthcare Center," which was the prior name of Meadowview Rehabilitation and Nursing Center.

18. Defendants intentionally used the name "Andorra" in order to advertise healthcare services to residents in the Andorra neighborhood/section of North Philadelphia. Andorra is located in the City and County of Philadelphia.

19. The employer name listed on the Plaintiff's paycheck was, at all times relevant hereto, "Rest Haven Nursing Center (Whitemarsh), Inc."

20. At all times relevant hereto, Plaintiff was an employee of Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., a corporation organized and existing under the laws of the

Commonwealth of Pennsylvania, with a principal place of business and registered office address at 9209 Ridge Pike, Philadelphia, PA 19128.

21.   Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., identifies its current registered office provider as being "CT Corporation System, Philadelphia, PA 19103."

22.   On September 12, 2011, Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., filed a Dicennial Report of Association Continued Existence, with the Pennsylvania Department of State and identified the "county of venue" as "Philadelphia County."

23.   The initial registered office address, and the post office address for the only incorporator of Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., is located at 1719 Packard Building, Philadelphia, PA 19102, which is located in the City and County of Philadelphia.

24.   On December 2, 1985, the Vice President of Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., changed the registered office address for Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., to 225 South Street, Philadelphia, Pennsylvania 19102.  The Vice President identified the "County" for the registered office as "Philadelphia" on the Change of Registered Office form.

25.   At all times relevant hereto, Plaintiff was an employee of Defendant, Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 1320 Penn Center Plaza, Philadelphia, PA 19102.

26.   Defendant, Rest Haven Care Corp., is the owner of the registered fictitious name, "Rest Haven – Whitemarsh Nursing Center."

27.   Defendant, Rest Haven Care Corp., filed Articles of Incorporation with the Pennsylvania Department of State, identified the location and post office address for its initial registered

office as 1320 Two Penn Center Plaza, Philadelphia, PA 19102, and specifically identified the "County" as Philadelphia too.

28.     9209 Ridge Pike is in the Zip Code 19128, the Zip Code for Philadelphia.

29.     Defendants identified on the Plaintiff's W2 statement that the address and principal place of business of Plaintiff's employer was "199 Community Drive, Great Neck, NY 11021."

30.     At all times relevant hereto, Plaintiff was an employee of Defendant, Premier Healthcare Management, LLC, a corporation organized and existing under the laws of the State of New York, with an address of 199 Community Drive, Great Neck, NY 11021 identified as the address to which the New York Department of State should mail process if accepted.

31.     Defendant, Premier Healthcare Management, LLC, operates a website for "Meadowview Rehabilitation and Nursing Center," and identifies on the "Contact Us" page that its principal place of business is located at 199 Community Drive, Great Neck, NY 11021.

32.     Plaintiff's employee handbook for Meadowview Rehabilitation and Nursing Center provided, "Any employment agreement entered into by the CEO of Premier Healthcare Management, LLC must be in writing to be enforceable"; "No representative of Meadowview, other than the CEO of Premier Healthcare Management, LLC, has the authority to enter into any agreement providing employment for a specific duration or to make any agreement contrary to this section of the handbook"; "Relatives of employees will not be hired, promoted, demoted or transferred into any position that would create a conflict of interest or place an employee under the direct supervision of a relative unless approved by the CEO of Premier Healthcare Management, LLC"; "The employment of relatives of the Nursing Home Administrator, Director of Nursing or any employee in a position with financial responsibility is prohibited without express approval of the CEO of Premier Healthcare Management, LLC"; and for reasonable accommodations due to disability, "Any employee

who is dissatisfied with the response to his or her accommodation request may appeal that response to the CEO of Premier Healthcare Management, LLC."

33.   Defendant, Premier Healthcare Management, LLC, owns and operates Meadowview Rehabilitation and Nursing Center, and five (5) other nursing and/or rehabilitation facilities in the State of New York (including Highfield Gardens Care Center located in Great Neck, New York; Greene Meadows Nursing and Rehabilitation Center located in Catskill, New York; Premier Genesee Rehabilitation and Nursing Center located in Batavia, New York; Westchester Center for Nursing and Rehabilitation located in Mt. Vernon, New York; and Pine Haven Nursing and Rehabilitation Center located in Philmont, New York).

34.   The organizer of Defendant, WM Operating, LLC, with the Commonwealth of Pennsylvania, identified a return address in Monsey, New York on the Certificate of Organization for Defendant, WM Operating, LLC.

35.   At all times relevant hereto, Defendants were joint employers or co-employers of Plaintiff.

36.   At all times relevant hereto, Defendant, Rest Haven Nursing Center (Whitemarsh), Inc., was responsible for compensating Plaintiff.

37.   Alternatively, at all times relevant hereto, Defendant, WM Operating, LLC, was responsible for compensating Plaintiff.

38.   At all times relevant hereto, Defendant, Premier Healthcare Management, LLC, made hiring decisions including hiring the Plaintiff, promulgated work rules, was responsible for addressing discrimination and harassment complaints, set conditions of employment, and was responsible for day-to-day supervision, describing in the "philosophy" section of its website that it considers itself "the top healthcare employer in each and every community we serve."

39.   Alternatively, Defendant, Rest Haven Care Corp., made hiring decisions including hiring the Plaintiff, promulgated work rules, was responsible for addressing discrimination and

7

harassment complaints, set conditions of employment, and was responsible for day-to-day supervision.

40. There is a significant degree of unity between Defendants with respect to who was compensating Plaintiff, making hiring decisions, promulgating work rules, addressing discrimination and/or harassment complaints, setting conditions of employment, and day-to-day supervision.

41. At all times relevant hereto, Defendants were each the ostensible or apparent employers of Plaintiff.

## JURISDICTION AND VENUE

42. Pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction over Plaintiff's Title VII claims, as those claims present a federal question.

43. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims, as those claims arise out of the same set of operative facts as the federal claims.

44. This Court may exercise personal jurisdiction over the Defendant, and venue is proper, because Defendant is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business in this District at 9209 Ridge Pike, Philadelphia, PA 19128, where the causes of action herein arose.

45. At all times relevant hereto, each Defendant employed 15 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

## COUNT I:  WRONGFUL DISCHARGE/TERMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Plaintiff, Frank "Doe" v. Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; <u>Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC)</u>**

46.   Plaintiff hereby incorporates by reference paragraphs 1 through 45 above as if the same were set forth more fully herein at length.

47.   Doe was hired by the Defendants in May 2015 as Defendants' Activities Director.

48.   Doe was qualified for the position, satisfactorily performed in the position for 1 year and 4 months before he was terminated, and was an enthusiastic employee who was beloved by the Meadowview residents and patients he served.

49.   In February 2016, John Chapman, a heterosexual male, was hired by Defendants as the new Nursing Home Administrator ("NHA").

50.   Mr. Chapman became Doe's direct supervisor in February 2016.

51.   In or around February 2016, the Interim Director of Pine Run who was previously a nurse supervisor under Mr. Chapman warned Doe that he should "turn down the gay" around Mr. Chapman.

52.   In or around February 2016, a second person (a unit nurse for Pine Run under Mr. Chapman) also warned Doe that he should not act gay around Mr. Chapman.

53.   After Mr. Chapman was hired and discovered Doe was gay in February 2016, Mr. Chapman repeatedly mocked Doe by referring to him by the female name, "Frances," instead of Doe's real name, "Frank." "Frank" is _not_ short for "Francis."

54.   When Mr. Chapman called Doe by the name, "Frances," Mr. Chapman always raised the inflection of his voice like a woman. The effeminate intonation was high-pitched and musical.

55.   Mr. Chapman referred to Doe as "Frances" even after Doe repeatedly told him to stop.

56.   Members of Defendants' activities staff repeatedly told Doe many times, beginning in February/March 2016, that he should not worry because Mr. Chapman was a "closet case."

57.  About three (3) months after Mr. Chapman started at Meadowview, in or around May 2016, Mr. Chapman asked Doe during a one-on-one whether Doe thought that Mr. Chapman did not like him.  Doe responded that he believed Mr. Chapman had a problem with gay people in general.  Mr. Chapman raised his hand in the air, dropped it in his lap, and said, "Frances!" in a high-pitched, dramatic fashion.

58.  From the time period of May 2016 through on or about September 6, 2016, Mr. Chapman continued to refer to Doe as "Frances," and at times he did so in a high-pitched manner.

59.  On or about September 6, 2016, after Labor Day, Doe put on a barbecue for the 11:00 p.m. to 7:00 a.m. staff in his capacity as Activities Director.  At the barbecue, Mr. Chapman again referred to Doe as "Frances" in front of his co-employees to embarrass Doe.

60.  On September 22, 2016, Mr. Chapman called Doe into his office and terminated him.

61.  Mr. Chapman stated that he was terminating Doe because Mr. Chapman allegedly saw Doe sleeping during a staff meeting the day before, on September 21, 2016.

62.  Defendants did not conduct an investigation into the alleged incident occurring on September 21, 2016, before terminating Doe the following day on September 22, 2016.

63.  Defendants routinely offered progressive discipline – a verbal warning, three (3) written warnings (*i.e.*, three strikes), a final written warning, and a suspension, including, upon information and belief, to other similarly situated heterosexual female employees, but Defendants did not offer these to Doe.

64.  Licensed practical nurse ("LPN"), Julie Mills, a similarly situated heterosexual female employee, openly called another employee a "bitch" and slammed her office door so hard that it came off the hinges.  Although Mills committed a more serious infraction, she was *not* terminated.

65.    On October 7, 2016, the Unemployment Compensation Board of Review found as follows
regarding Doe: "the claimant denied sleeping," "[t]he claimant did not knowingly or
intentionally violate the employer's policies," and "there is no competent evidence in the
record to support a finding of wilful misconduct."

66.    Sleeping is an exaggerated and completely fabricated reason, used by Mr. Chapman, as a
pretext to terminate Doe.

67.    Doe was terminated on September 22, 2016 on account of his sex.

68.    Plaintiff exhausted his administrative remedies.  A Right-to-Sue Letter from the EEOC is
attached hereto as Exhibit "A."

**WHEREFORE**, Plaintiff Doe requests judgment in his favor and against Defendants,
WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care
Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh),
Inc.; and Premier Healthcare Management, LLC, for any and all back and front pay, benefits,
commissions, bonuses, pay increases, and overtime from September 22, 2016 through the
present; compensatory damages for severe emotional distress, psychological trauma, pain and
suffering, humiliation, inconvenience, and loss of enjoyment of life, due to Plaintiff's
termination, due to the harassment, and due to suppressing his gender expression to avoid
appearing gay; past and future medical expenses for the costs of appointments with a psychiatrist
and psychiatric medications; suffering a decline in academics; student loan debt and tuition
payments due to withdrawal from three (3) college courses; an inability to pursue his avocation
and five-year plan to become a registered nurse; punitive damages; and injunctive relief
requiring Defendants to remove any record from Plaintiff's personnel file that Plaintiff was
terminated for allegedly sleeping during a meeting; to adopt, conspicuously post, and
disseminate a non-discrimination policy which explicitly prohibits discrimination based on

"sexual orientation"; to perform anti-harassment training; and to post notice of the verdict in this case at 9209 Ridge Pike; as well as any pre- and post-judgment interest; delay damages; reasonable attorneys' fees; expert witness fees; and costs of suit.

**COUNT II:  HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(Plaintiff, Frank "Doe" v. Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC)**

69.     Plaintiff hereby incorporates by reference paragraphs 1 through 68 above as if the same were set forth more fully herein at length.

70.     In February 2016, John Chapman, a heterosexual male, was hired by Defendants as the new Nursing Home Administrator ("NHA").

71.     Mr. Chapman became Doe's direct supervisor in February 2016.

72.     In or around February 2016, the Interim Director of Pine Run who was previously a nurse supervisor under Mr. Chapman warned Doe that he should "turn down the gay" around Mr. Chapman.

73.     In or around February 2016, a second person (a unit nurse for Pine Run under Mr. Chapman) also warned Doe that he should not act gay around Mr. Chapman.

74.     After Mr. Chapman was hired and discovered Doe was gay in February 2016, Mr. Chapman repeatedly mocked Doe by referring to him by the female name, "Frances," instead of Doe's real name, "Frank."  "Frank" is _not_ short for "Francis."

75.     When Mr. Chapman called Doe by the name, "Frances," Mr. Chapman always raised the inflection of his voice like a woman.  The effeminate intonation was high-pitched and musical.

76.     Mr. Chapman referred to Doe as "Frances" even after Doe repeatedly told him to stop.

77. Members of Defendants' activities staff repeatedly told Doe many times, beginning in February/March 2016, that he should not worry because Mr. Chapman was a "closet case."

78. About three (3) months after Mr. Chapman started at Meadowview, in or around May 2016, Mr. Chapman asked Doe during a one-on-one whether Doe thought that Mr. Chapman did not like him.  Doe responded that he believed Mr. Chapman had a problem with gay people in general.  Mr. Chapman raised his hand in the air, dropped it in his lap, and said, "Frances!" in a high-pitched, dramatic fashion.

79. From the time period of May 2016 through on or about September 6, 2016, Mr. Chapman continued to refer to Doe as "Frances," and at times he did so in a high-pitched manner.

80. On or about September 6, 2016, after Labor Day, Doe put on a barbecue for the 11:00 p.m. to 7:00 a.m. staff in his capacity as Activities Director.  At the barbecue, Mr. Chapman again referred to Doe as "Frances" in front of his co-employees to embarrass Doe.

81. On September 22, 2016, Mr. Chapman called Doe into his office and terminated him.

82. At all times relevant hereto, and at present, the Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center, Rest Haven Nursing Center (Whitemarsh), Inc., and Premier Healthcare Management, LLC, failed to adopt a policy explicitly prohibiting "sexual orientation" discrimination and "sexual orientation" harassment.

83. Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center, Rest Haven Nursing Center (Whitemarsh), Inc., and Premier Healthcare Management, LLC, failed to supervise Mr. Chapman, permitting him to harass Doe with the name "Frances" in front of other employees for eight (8) months with impunity.

84.   Mr. Chapman did not provide prompt and appropriate remedial action in response to Plaintiff's complaint about Mr. Chapman's dislike of gay people in or around May 2016.

85.   Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center, Rest Haven Nursing Center (Whitemarsh), Inc., and Premier Healthcare Management, LLC, are vicariously liable for the conduct of Mr. Chapman because Mr. Chapman was Doe's supervisor, was the Nursing Home Administrator ("NHA") with supervisory authority over the entire Meadowview facility, and took tangible employment action against Plaintiff in the form of discharge.

**WHEREFORE**, Plaintiff Doe requests judgment in his favor and against Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC, for any and all back and front pay, benefits, commissions, bonuses, pay increases, and overtime from September 22, 2016 through the present; compensatory damages for severe emotional distress, psychological trauma, pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, due to Plaintiff's termination, due to the harassment, and due to suppressing his gender expression to avoid appearing gay; past and future medical expenses for the costs of appointments with a psychiatrist and psychiatric medications; suffering a decline in academics; student loan debt and tuition payments due to withdrawal from three (3) college courses; an inability to pursue his avocation and five-year plan to become a registered nurse; punitive damages; and injunctive relief requiring Defendants to remove any record from Plaintiff's personnel file that Plaintiff was terminated for allegedly sleeping during a meeting; to adopt, conspicuously post, and disseminate a non-discrimination policy which explicitly prohibits discrimination based on

"sexual orientation"; to perform anti-harassment training; and to post notice of the verdict in this case at 9209 Ridge Pike; as well as any pre- and post-judgment interest; delay damages; reasonable attorneys' fees; expert witness fees; and costs of suit.

**COUNT III: WRONGFUL DISCHARGE/TERMINATION DUE TO RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(Plaintiff, Frank "Doe" v. Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; <u>Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC</u>)**

86.  Plaintiff hereby incorporates by reference paragraphs 1 through 85 above as if the same were set forth more fully herein at length.

87.  Doe was hired by the Defendants in May 2015 as Defendants' Activities Director.

88.  Doe was qualified for the position, satisfactorily performed in the position for 1 year and 4 months before he was terminated, and was an enthusiastic employee who was beloved by the Meadowview residents and patients he served.

89.  In February 2016, John Chapman, a heterosexual male, was hired by Defendants as the new Nursing Home Administrator ("NHA").

90.  Mr. Chapman became Doe's direct supervisor in February 2016.

91.  In or around February 2016, the Interim Director of Pine Run who was previously a nurse supervisor under Mr. Chapman warned Doe that he should "turn down the gay" around Mr. Chapman.

92.  In or around February 2016, a second person (a unit nurse for Pine Run under Mr. Chapman) also warned Doe that he should not act gay around Mr. Chapman.

93.  After Mr. Chapman was hired and discovered Doe was gay in February 2016, Mr. Chapman repeatedly mocked Doe by referring to him by the female name, "Frances," instead of Doe's real name, "Frank." "Frank" is <u>*not*</u> short for "Francis."

94.   When Mr. Chapman called Doe by the name, "Frances," Mr. Chapman always raised the inflection of his voice like a woman.  The effeminate intonation was high-pitched and musical.

95.   Mr. Chapman referred to Doe as "Frances" even after Doe repeatedly told him to stop.

96.   Members of Defendants' activities staff repeatedly told Doe many times, beginning in February/March 2016, that he should not worry because Mr. Chapman was a "closet case."

97.   About three (3) months after Mr. Chapman started at Meadowview, in or around May 2016, Mr. Chapman asked Doe during a one-on-one whether Doe thought that Mr. Chapman did not like him.  Doe responded that he believed Mr. Chapman had a problem with gay people in general.  Mr. Chapman raised his hand in the air, dropped it in his lap, and said, "Frances!" in a high-pitched, dramatic fashion.

98.   From the time period of May 2016 through on or about September 6, 2016, Mr. Chapman continued to refer to Doe as "Frances," and at times he did so in a high-pitched manner.

99.   On or about September 6, 2016, after Labor Day, Doe put on a barbecue for the 11:00 p.m. to 7:00 a.m. staff in his capacity as Activities Director.  At the barbecue, Mr. Chapman again referred to Doe as "Frances" in front of his co-employees to embarrass Doe.

100.   On September 22, 2016, Mr. Chapman called Doe into his office and terminated him.

101.   Mr. Chapman stated that he was terminating Doe because Mr. Chapman allegedly saw Doe sleeping during a staff meeting the day before, on September 21, 2016.

102.   Defendants did not conduct an investigation into the alleged incident occurring on September 21, 2016, before terminating Doe the following day on September 22, 2016.

103.   Defendants routinely offered progressive discipline – a verbal warning, three (3) written warnings (*i.e.*, three strikes), a final written warning, and a suspension, including, upon

information and belief, to other similarly situated heterosexual female employees, but Defendants did not offer these to Doe.

104. Licensed practical nurse ("LPN"), Julie Mills, a similarly situated heterosexual female employee, openly called another employee a "bitch" and slammed her office door so hard that it came off the hinges.  Although Mills committed a more serious infraction, she was *not* terminated.

105. On October 7, 2016, the Unemployment Compensation Board of Review found as follows regarding Doe: "the claimant denied sleeping," "[t]he claimant did not knowingly or intentionally violate the employer's policies," and "there is no competent evidence in the record to support a finding of wilful misconduct."

106. Sleeping is an exaggerated and completely fabricated reason, used by Mr. Chapman, as a pretext to terminate Doe.

107. Doe was terminated on September 22, 2016, in retaliation for his protected conduct of complaining about/opposing Mr. Chapman's dislike of gay people in or around May 2016.

**WHEREFORE**, Plaintiff Doe requests judgment in his favor and against Defendants WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC, for any and all back and front pay, benefits, commissions, bonuses, pay increases, and overtime from September 22, 2016 through the present; compensatory damages for severe emotional distress, psychological trauma, pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, due to Plaintiff's termination, due to the harassment, and due to suppressing his gender expression to avoid appearing gay; past and future medical expenses for the costs of appointments with a psychiatrist and psychiatric medications; suffering a decline in academics; student loan debt and tuition

payments due to withdrawal from three (3) college courses; an inability to pursue his avocation and five-year plan to become a registered nurse; punitive damages; and injunctive relief requiring Defendants to remove any record from Plaintiff's personnel file that Plaintiff was terminated for allegedly sleeping during a meeting; to adopt, conspicuously post, and disseminate a non-discrimination policy which explicitly prohibits discrimination based on "sexual orientation"; to perform anti-harassment training; and to post notice of the verdict in this case at 9209 Ridge Pike; as well as any pre- and post-judgment interest; delay damages; reasonable attorneys' fees; expert witness fees; and costs of suit.

### COUNT IV:  WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE (Plaintiff, Frank "Doe" v. Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC)

108.   Plaintiff hereby incorporates by reference paragraphs 1 through 107 above as if the same were set forth more fully herein at length.

109.   Doe was hired by the Defendants in May 2015 as Defendants' Activities Director.

110.   Doe was qualified for the position, satisfactorily performed in the position for 1 year and 4 months before he was terminated, and was an enthusiastic employee who was beloved by the Meadowview residents and patients he served.

111.   In February 2016, John Chapman, a heterosexual male, was hired by Defendants as the new Nursing Home Administrator ("NHA").

112.   Mr. Chapman became Doe's direct supervisor in February 2016.

113.   In or around February 2016, the Interim Director of Pine Run who was previously a nurse supervisor under Mr. Chapman warned Doe that he should "turn down the gay" around Mr. Chapman.

114. In or around February 2016, a second person (a unit nurse for Pine Run under Mr. Chapman) also warned Doe that he should not act gay around Mr. Chapman.

115. After Mr. Chapman was hired and discovered Doe was gay in February 2016, Mr. Chapman repeatedly mocked Doe by referring to him by the female name, "Frances," instead of Doe's real name, "Frank." "Frank" is *not* short for "Francis."

116. When Mr. Chapman called Doe by the name, "Frances," Mr. Chapman always raised the inflection of his voice like a woman. The effeminate intonation was high-pitched and musical.

117. Mr. Chapman referred to Doe as "Frances" even after Doe repeatedly told him to stop.

118. Members of Defendants' activities staff repeatedly told Doe many times, beginning in February/March 2016, that he should not worry because Mr. Chapman was a "closet case."

119. About three (3) months after Mr. Chapman started at Meadowview, in or around May 2016, Mr. Chapman asked Doe during a one-on-one whether Doe thought that Mr. Chapman did not like him. Doe responded that he believed Mr. Chapman had a problem with gay people in general. Mr. Chapman raised his hand in the air, dropped it in his lap, and said, "Frances!" in a high-pitched, dramatic fashion.

120. From the time period of May 2016 through on or about September 6, 2016, Mr. Chapman continued to refer to Doe as "Frances," and at times he did so in a high-pitched manner.

121. On or about September 6, 2016, after Labor Day, Doe put on a barbecue for the 11:00 p.m. to 7:00 a.m. staff in his capacity as Activities Director. At the barbecue, Mr. Chapman again referred to Doe as "Frances" in front of his co-employees to embarrass Doe.

122. On September 22, 2016, Mr. Chapman called Doe into his office and terminated him.

123. Mr. Chapman stated that he was terminating Doe because Mr. Chapman allegedly saw Doe sleeping during a staff meeting the day before, on September 21, 2016.

124.   Defendants did not conduct an investigation into the alleged incident occurring on September 21, 2016, before terminating Doe the following day on September 22, 2016.

125.   Defendants routinely offered progressive discipline – a verbal warning, three (3) written warnings (*i.e.*, three strikes), a final written warning, and a suspension, including, upon information and belief, to other similarly situated heterosexual female employees, but Defendants did not offer these to Doe.

126.   Licensed practical nurse ("LPN"), Julie Mills, a similarly situated heterosexual female employee, openly called another employee a "bitch" and slammed her office door so hard that it came off the hinges.  Although Mills committed a more serious infraction, she was *not* terminated.

127.   On October 7, 2016, the Unemployment Compensation Board of Review found as follows regarding Doe: "the claimant denied sleeping," "[t]he claimant did not knowingly or intentionally violate the employer's policies," and "there is no competent evidence in the record to support a finding of wilful misconduct."

128.   Sleeping is an exaggerated and completely fabricated reason, used by Mr. Chapman, as a pretext to terminate Doe.

129.   Doe was terminated on September 22, 2016 on account of his sexual orientation.

130.   Plaintiff exhausted his administrative remedies.  A Notice of Right-to-Sue from the Philadelphia Commission on Human Relations ("PCHR") is attached hereto as Exhibit "B."

**WHEREFORE**, Plaintiff Doe requests judgment in his favor and against Defendants WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC, for any and all back and front pay, benefits, commissions, bonuses, pay increases, and overtime from September 22, 2016 through the

present; compensatory damages for severe emotional distress, psychological trauma, pain and

suffering, humiliation, inconvenience, and loss of enjoyment of life, due to Plaintiff's

termination, due to the harassment, and due to suppressing his gender expression to avoid

appearing gay; past and future medical expenses for the costs of appointments with a psychiatrist

and psychiatric medications; suffering a decline in academics; student loan debt and tuition

payments due to withdrawal from three (3) college courses; an inability to pursue his avocation

and five-year plan to become a registered nurse; punitive damages; and injunctive relief

requiring Defendants to remove any record from Plaintiff's personnel file that Plaintiff was

terminated for allegedly sleeping during a meeting; to adopt, conspicuously post, and

disseminate a non-discrimination policy which explicitly prohibits discrimination based on

"sexual orientation"; to perform anti-harassment training; and to post notice of the verdict in this

case at 9209 Ridge Pike; as well as any pre- and post-judgment interest; delay damages;

reasonable attorneys' fees; expert witness fees; and costs of suit.

### COUNT V:  HOSTILE WORK ENVIRONMENT BASED ON SEXUAL ORIENTATION IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE (Plaintiff, Frank "Doe" v. Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC)

131.    Plaintiff hereby incorporates by reference paragraphs 1 through 130 above as if the same

were set forth more fully herein at length.

132.    In February 2016, John Chapman, a heterosexual male, was hired by Defendants as the new

Nursing Home Administrator ("NHA").

133.    Mr. Chapman became Doe's direct supervisor in February 2016.

134.    In or around February 2016, the Interim Director of Pine Run who was previously a nurse

supervisor under Mr. Chapman warned Doe that he should "turn down the gay" around Mr.

Chapman.

135.    In or around February 2016, a second person (a unit nurse for Pine Run under Mr. Chapman)
        also warned Doe that he should not act gay around Mr. Chapman.

136.    After Mr. Chapman was hired and discovered Doe was gay in February 2016, Mr. Chapman
        repeatedly mocked Doe by referring to him by the female name, "Frances," instead of Doe's
        real name, "Frank."  "Frank" is _not_ short for "Francis."

137.    When Mr. Chapman called Doe by the name, "Frances," Mr. Chapman always raised the
        inflection of his voice like a woman.  The effeminate intonation was high-pitched and
        musical.

138.    Mr. Chapman referred to Doe as "Frances" even after Doe repeatedly told him to stop.

139.    Members of Defendants' activities staff repeatedly told Doe many times, beginning in
        February/March 2016, that he should not worry because Mr. Chapman was a "closet case."

140.    About three (3) months after Mr. Chapman started at Meadowview, in or around May 2016,
        Mr. Chapman asked Doe during a one-on-one whether Doe thought that Mr. Chapman did
        not like him.  Doe responded that he believed Mr. Chapman had a problem with gay people
        in general.  Mr. Chapman raised his hand in the air, dropped it in his lap, and said, "Frances!"
        in a high-pitched, dramatic fashion.

141.    From the time period of May 2016 through on or about September 6, 2016, Mr. Chapman
        continued to refer to Doe as "Frances," and at times he did so in a high-pitched manner.

142.    On or about September 6, 2016, after Labor Day, Doe put on a barbecue for the 11:00 p.m. to
        7:00 a.m. staff in his capacity as Activities Director.  At the barbecue, Mr. Chapman again
        referred to Doe as "Frances" in front of his co-employees to embarrass Doe.

143.    On September 22, 2016, Mr. Chapman called Doe into his office and terminated him.

144.    At all times relevant hereto, and at present, the Defendants, WM Operating, LLC d/b/a
        Meadowview Rehabilitation and Nursing Center, Rest Haven Care Corp. d/b/a Rest Haven-

Whitemarsh Nursing Center, Rest Haven Nursing Center (Whitemarsh), Inc., and Premier Healthcare Management, LLC, failed to adopt a policy explicitly prohibiting "sexual orientation" discrimination and "sexual orientation" harassment.

145.   Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center, Rest Haven Nursing Center (Whitemarsh), Inc., and Premier Healthcare Management, LLC, failed to supervise Mr. Chapman, permitting him to harass Doe with the name "Frances" in front of other employees for eight (8) months with impunity.

146.   Mr. Chapman did not provide prompt and appropriate remedial action in response to Plaintiff's complaint about Mr. Chapman's dislike of gay people in or around May 2016.

147.   Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center, Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center, Rest Haven Nursing Center (Whitemarsh), Inc., and Premier Healthcare Management, LLC, are vicariously liable for the conduct of Mr. Chapman because Mr. Chapman was Doe's supervisor, was the Nursing Home Administrator ("NHA") with supervisory authority over the entire Meadowview facility, and took tangible employment action against Plaintiff in the form of discharge.

**WHEREFORE**, Plaintiff Doe requests judgment in his favor and against Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC, for any and all back and front pay, benefits, commissions, bonuses, pay increases, and overtime from September 22, 2016 through the present; compensatory damages for severe emotional distress, psychological trauma, pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, due to Plaintiff's

termination, due to the harassment, and due to suppressing his gender expression to avoid appearing gay; past and future medical expenses for the costs of appointments with a psychiatrist and psychiatric medications; suffering a decline in academics; student loan debt and tuition payments due to withdrawal from three (3) college courses; an inability to pursue his avocation and five-year plan to become a registered nurse; punitive damages; and injunctive relief requiring Defendants to remove any record from Plaintiff's personnel file that Plaintiff was terminated for allegedly sleeping during a meeting; to adopt, conspicuously post, and disseminate a non-discrimination policy which explicitly prohibits discrimination based on "sexual orientation"; to perform anti-harassment training; and to post notice of the verdict in this case at 9209 Ridge Pike; as well as any pre- and post-judgment interest; delay damages; reasonable attorneys' fees; expert witness fees; and costs of suit.

### COUNT VI:  WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION IN VIOLATION OF THE WHITEMARSH TOWNSHIP HUMAN RELATIONS ORDINANCE
### (Plaintiff, Frank "Doe" v. Defendants, WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center; Rest Haven Care Corp. d/b/a Rest Haven-Whitemarsh Nursing Center; Rest Haven Nursing Center (Whitemarsh), Inc.; and Premier Healthcare Management, LLC)

148.   Plaintiff hereby incorporates by reference paragraphs 1 through 147 above as if the same were set forth more fully herein at length.

149.   Doe was hired by the Defendants in May 2015 as Defendants' Activities Director.

150.   Doe was qualified for the position, satisfactorily performed in the position for 1 year and 4 months before he was terminated, and was an enthusiastic employee who was beloved by the Meadowview residents and patients he served.

151.   In February 2016, John Chapman, a heterosexual male, was hired by Defendants as the new Nursing Home Administrator ("NHA").

152.   Mr. Chapman became Doe's direct supervisor in February 2016.

153.   In or around February 2016, the Interim Director of Pine Run who was previously a nurse supervisor under Mr. Chapman warned Doe that he should "turn down the gay" around Mr. Chapman.

154.   In or around February 2016, a second person (a unit nurse for Pine Run under Mr. Chapman) also warned Doe that he should not act gay around Mr. Chapman.

155.   After Mr. Chapman was hired and discovered Doe was gay in February 2016, Mr. Chapman repeatedly mocked Doe by referring to him by the female name, "Frances," instead of Doe's real name, "Frank."  "Frank" is _not_ short for "Francis."

156.   When Mr. Chapman called Doe by the name, "Frances," Mr. Chapman always raised the inflection of his voice like a woman.  The effeminate intonation was high-pitched and musical.

157.   Mr. Chapman referred to Doe as "Frances" even after Doe repeatedly told him to stop.

158.   Members of Defendants' activities staff repeatedly told Doe many times, beginning in February/March 2016, that he should not worry because Mr. Chapman was a "closet case."

159.   About three (3) months after Mr. Chapman started at Meadowview, in or around May 2016, Mr. Chapman asked Doe during a one-on-one whether Doe thought that Mr. Chapman did not like him.  Doe responded that he believed Mr. Chapman had a problem with gay people in general.  Mr. Chapman raised his hand in the air, dropped it in his lap, and said, "Frances!" in a high-pitched, dramatic fashion.

160.   From the time period of May 2016 through on or about September 6, 2016, Mr. Chapman continued to refer to Doe as "Frances," and at times he did so in a high-pitched manner.

161.   On or about September 6, 2016, after Labor Day, Doe put on a barbecue for the 11:00 p.m. to 7:00 a.m. staff in his capacity as Activities Director.  At the barbecue, Mr. Chapman again referred to Doe as "Frances" in front of his co-employees to embarrass Doe.

162.   On September 22, 2016, Mr. Chapman called Doe into his office and terminated him.

163.   Mr. Chapman stated that he was terminating Doe because Mr. Chapman allegedly saw Doe

sleeping during a staff meeting the day before, on September 21, 2016.

164.   Defendants did not conduct an investigation into the alleged incident occurring on September

21, 2016, before terminating Doe the following day on September 22, 2016.

165.   Defendants routinely offered progressive discipline – a verbal warning, three (3) written

warnings (*i.e.*, three strikes), a final written warning, and a suspension, including, upon

information and belief, to other similarly situated heterosexual female employees, but

Defendants did not offer these to Doe.

166.   Licensed practical nurse ("LPN"), Julie Mills, a similarly situated heterosexual female

employee, openly called another employee a "bitch" and slammed her office door so hard

that it came off the hinges.  Although Mills committed a more serious infraction, she was *not*

terminated.

167.   On October 7, 2016, the Unemployment Compensation Board of Review found as follows

regarding Doe: "the claimant denied sleeping," "[t]he claimant did not knowingly or

intentionally violate the employer's policies," and "there is no competent evidence in the

record to support a finding of wilful misconduct."

168.   Sleeping is an exaggerated and completely fabricated reason, used by Mr. Chapman, as a

pretext to terminate Doe.

169.   Doe was terminated on September 22, 2016 on account of his sexual orientation.

170.   Plaintiff exhausted his administrative remedies under the Whitemarsh Township Human

Relations Ordinance.  In addition to filing, cross-filing and/or dual-filing a complaint with

the Whitemarsh Township Human Relations Commission when Plaintiff filed with the Equal

Employment Opportunity Commission, Pennsylvania Human Relations Commission,