IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK "DOE" : | |
|     Plaintiff, : | |
| v. : | CIVIL ACTION NO.: 17-cv-2204 |
| WM OPERATING, LLC d/b/a : | |
| MEADOWVIEW REHABILITATION : | |
| AND NURSING CENTER, et al. : | |
|     Defendants. : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PREMIER HEALTHCARE MANAGEMENT, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

    Defendant Premier Healthcare Management, LLC ("Premier"), by and through its undersigned counsel, moves to dismiss the Complaint in its entirety: (1) for the reasons set forth in Co-Defendants', WM Operating LLC d/b/a Meadowview Rehabilitation and Nursing Center and John Chapman, Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint; and (2) for the reasons set forth set forth in this Memorandum of Law.

**I.    PLAINTIFF'S CAUSES OF ACTION**

    This is an employment discrimination and retaliation case. Plaintiff, a gay male, alleges that while employed as the Activities Director for WM Operating, LLC d/b/a Meadowview Rehabilitation and Nursing Center ("Meadowview"), he was subjected to a hostile work environment and harassment because of his sex and sexual orientation by the facility's Nursing Home Administrator, John Chapman. See Complaint attached hereto as Exhibit "A". Plaintiff also contends that on September 22, 2016 he was terminated by Meadowview because of his sex and sexual orientation.

    Plaintiff's Complaint contains thirteen (13) Counts alleging violations of Title VII of the

Civil Rights Act of 1964, the Philadelphia Fair Practices Ordinance, the Whitemarsh Township Human Relations Ordinance, the Springfield Township Human Relations Ordinance, the New York State Human Rights Law, and the Pennsylvania Human Relations Act. As demonstrated below, Plaintiff's Complaint should be dismissed in its entirety.

Counts I and II of the Complaint, which allege wrongful discharge/termination and hostile work environment based on sex in violation of Title VII, should be dismissed as the gravamen of the Complaint is that Plaintiff was discriminated against because of his sexual orientation and not because of his sex. The Third Circuit Court has held that discrimination based on sexual orientation is not cognizable under Title VII.

Count III, which alleges wrongful discharge/termination due to retaliation in violation of Title VII, should be dismissed as Plaintiff has failed to state claim. Plaintiff has failed to plead facts showing a causal connection between his alleged protected activity and the alleged adverse employment action.

In addition, Plaintiff claims that certain local Human Relations Ordinances and state Human Rights Laws prohibiting unlawful discrimination were violated. In Counts IV and V, Plaintiff alleges that the Philadelphia Fair Practices Ordinance was violated. In Count VI and VII, it is alleged that the Whitemarsh Township Human Relations Ordinance was violated. In Counts X and XI, it is alleged that the New York State Human Rights Law ("NYSHRL") was violated. The Meadowview facility and property are located solely within the confines of Springfield Township, Montgomery County, Pennsylvania. None of the actions as alleged by Plaintiff took place in the City or County of Philadelphia, the Township of Whitemarsh, Pennsylvania or the state of New York. Therefore, Counts IV, V, VI, VII, X and XI should be dismissed as the allegations in Plaintiffs Complaint do not fall within the purview of these ordinances or laws.

In Counts VIII and IX, Plaintiff claims that the Springfield Township Human Relations Ordinance was violated. Plaintiff is precluded from making such claims as he cannot establish that he timely filed his complaint within 180 days of the alleged act of discrimination as required by the Springfield Township Human Relations Ordinance. Therefore, Counts VIII and IX should be dismissed.

Finally, Counts XII and XIII, which allege wrongful discharge/termination and hostile work environment based on sex in violation of the Pennsylvania Human Relations Act ("PHRA"), should be dismissed as the basis of Plaintiffs Complaint was that he was discriminated against because of his sexual orientation. Discrimination based on sexual orientation is not a cognizable claim under the PHRA.

## II.     ADDITIONAL RELEVANT ALLEGATIONS

Plaintiff alleges generally that Premier was Plaintiff's employer under a "joint employer" theory. In support, Plaintiff alleges:

- Lisa Sofia, Chief Executive Officer of Premier, was also the Chief Operating Officer for co-defendant WM Operating LLC. Exhibit "A", ¶¶ 5-6

- Premier "owns and operates" Meadowview Rehabilitation and Nursing Center "as one of Premier Healthcare Management, LLC's facilities", as well as another rehabilitation center located in Philadelphia County. Exhibit "A", ¶¶ 7-8.

- "Plaintiff was an employee of Defendant [Premier], a corporation organized and existing under the laws of the State of New York, with an address of 199 Community Drive, Great

Neck, NY 11021 identified as the address to which New York Department of State should mail process if accepted." Exhibit "A", ¶ 30.

- Premier operates a website for Meadowview. Exhibit "A", ¶ 31.
- Plaintiff's employee handbook for Meadowview makes reference to requiring the CEO of Premier having sole authority to enter into any agreement providing employment for a specific duration, to approve the hiring of relatives of employees, and for the CEO of Premier to review appeals of reasonable accommodation requests due to disability. Exhibit "A", ¶ 32. There are no allegations in the Complaint in which Plaintiff claims he was hired for a specific duration, approved for hire as a relative, or sought to appeal a reasonable accommodation request with Premier's CEO.
- Premier "owns and operates" Meadowview, as well as five (5) other nursing and/or rehabilitation facilities in New York. Exhibit "A", ¶ 33.
- Premier was a "joint employer" or "co-employer" of Plaintiff. Exhibit "A", ¶ 35.
- Plaintiff alleges in a conclusory and general manner, that Premier made hiring decisions and hired Plaintiff, promulgated work rules, addressed discrimination complaints, set conditions of employment, was responsible for day-to-day supervision, and identifies itself on its website as "the top healthcare employer in each and every community we serve." Exhibit "A", ¶ 38.
- Apparently unsure of the allegations in Paragraph 38 of the Complaint, Plaintiff alleges that "Alternatively, Defendant Rest Have Care Corp. made hiring decisions including hiring the Plaintiff, promulgated work rules, was responsible for addressing discrimination and harassment complaints, set conditions of employment, and was responsible for day-to-day supervision. Exhibit "A", ¶ 39.

- There is a "significant degree of unity between Defendants with respect to who was compensating Plaintiff, making hiring decision, promulgating work rules, addressing discrimination and/or harassment complaints, setting conditions of employment, and day-to-day supervision." Exhibit "A", ¶ 40.
- Defendants, including Premier, "were each the ostensible or apparent employers of Plaintiff." Exhibit "A", ¶ 41.

These allegations are purportedly set forth in an attempt to plead the existence of an employment relationship between Premier and Plaintiff, which is required for all of Plaintiff's causes of action against Premier. These allegations do sufficiently plead the existence of an employment relationship and/or are otherwise not relevant considerations under the common law principals used to determine the existence of an employer/employee relationship.

### III. LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the nonmoving party. Powell v. Weiss, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health, 503 F.3d 256, 260 (3d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Although the Federal Rules of Civil Procedure impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause

of action. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Simply reciting the elements will not suffice. Id. (holding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); see also Phillips, 515 F.3d at 231.

The Third Circuit has established a two-part analysis of a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. Id. at 211. If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged—but failed to show—that the pleader is entitled to relief. Id.

In ruling on a motion to dismiss, a court relies on the complaint as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). The court may also consider "undisputedly authentic" documents. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court, however, need not accept any conclusions of law, unsupported conclusions, or unwarranted inferences from the Complaint. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Feingold v. Graff, 516 Fed. Appx. 223, 225 (3d. Cir. Pa.2013) (quoting Fed. R. Evid. 201(b)). "A court may consider judicially noticeable facts without converting a motion to dismiss into a motion for summary judgment." (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007)).

### III.   ARGUMENT

1. **Counts I through XIII of the Complaint Against Premier Should be Dismissed for the Reasons Set Forth in Co-Defendants' Memorandum of Law.**

Counts I through XIII of the Complaint against Premier should be dismissed for the reasons set forth in Co-Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint. For that reason, Co-Defendants' Memorandum of Law, incorporated herein as if set forth in full, is attached hereto as Exhibit "B".

2. **Plaintiff has Pled Insufficient Facts to Establish that Premier was His Employer**

Plaintiff alleges only generally and in a conclusory manner that Premier was his employer under a "joint employer" theory. The joint employer test for determining the existence of an employment relationship for purposes of Title VII has been rejected by the Third Circuit. Under the common law test for determining the existence of an employment relationship articulated by the Supreme Court in Nationwide Mutual Insurance Co. v. Darden, Plaintiff has failed to plead facts sufficient to establish that Premier was his employer. 112 S. Ct. 1344 (1992)

Title VII forbids, among other things, "status-based discrimination by employers, employment agencies, labor organizations, and training programs." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2530, 186 L. Ed. 2d 503 (2013) (citing 42 U.S.C. § 2000e-2(a)-(d)). Accordingly, in order to assert his Title VII claim, Plaintiff must demonstrate the existence of an

"employment relationship" with Premier. Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013).

Claims brought under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq., are generally "'interpreted coextensively with Title VII claims.'" Brown v. J. Kaz, Inc., 581 F.3d 175, 179 n.1 (3d Cir. 2009) (quoting Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006)). The Philadelphia Fair Practices Ordinance, Whitemarsh Township Human Relations Ordinance, and Springfield Township Human Relations Ordinance are laws enforced by Local Human Relations Commissions specifically authorized pursuant to the PHRA. See 43 P.S. § 962.1. Similarly, claims brought pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Human Rights Law, Executive Law § 296, are interpreted coextensively with Title VII claims for purposes of determining the existence of an employee/employer relationship. Stetka v. Hunt Real Estate Corp., 859 F. Supp. 661 (W.D.N.Y. 1994) (applying the common law agency test set forth in Darden for purposes of determining an employment relationship under Title VII and the NYSHRL).

Plaintiff alleges that Premier was a "joint employer" or "co-employer" of Plaintiff and "the ostensible or apparent [employer] of Plaintiff." Exhibit "A", ¶¶ 35, 41. In order to determine whether a defendant is a joint employer as alleged, a court will consider: (1) whether the employer has the authority to hire and fire employees; (2) whether the employer has authority to promulgate work rules, assignments, and set the conditions of employment including compensation, benefits, and hours; (3) whether the alleged employer engages in day-to-day supervision, including employee discipline; and (4) whether the alleged employer controls employee records including payroll, insurance, taxes, "and the like". In re. Enterprise Rent-A-Car Wage & Hour Empl.

Practices Litig., 683, F.3d 462, 469 (3d Cir. 2012). The allegations in the Complaint appear to be pled to address these factors of the test for "joint employer".

However, the Third Circuit has rejected the joint employer test for purposes of determining an employer/employee relationship in Title VII cases. Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213-14 (3d Cir. 2015). The Court held that the Enterprise [joint employer] test applies "[w]hen determining someone is an employee under the [Fair Labor Standards Act ("FLSA")]. Faush, 808 F.3d at 214. "The definition of "employee" in the FLSA is of "striking breadth" and "cover[s] some parties who might not qualify as such under a strict application of traditional agency law principles." Id. (quoting Darden, 503 U.S. at 326). Accordingly, the "textual asymmetry" between Title VII and the FLSA "precludes reliance on FLSA cases." Id. The Court held that the proper inquiry for determining whether a party is an employee for purposes of Title VII is by application of the factors described in Darden:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. (quoting Darden, 503 U.S. at 323).

Plaintiff has failed to allege that the skill required for his job weighs in favor of determining that he had an employment relationship with Premier. Plaintiff was an Activities Director at Meadowview. Exhibit "A", ¶ 16. Plaintiff does not describe what level of skill is involved with

the Activities Director position.[1] From Plaintiff's job title alone, Activities Director, Plaintiff conveys only that he held a Director level position with Meadowview. Plaintiff was not a rank and file employee – and the only employer for whom he performed these duties was Meadowview. There are no allegations that Plaintiff utilized his skills as Activities Director in any capacity related to Premier. Accordingly, this factor must weigh in favor of a determination that Premier was not Plaintiff's employer.

Plaintiff has failed to allege that any of the instrumentalities or tools required for his position were provided by Premier. Plaintiff has not pled what instrumentalities or tools were involved with his work, nor has he alleged that any of his job duties or functions were performed using any instrumentalities or tools provided by Premier. Plaintiff has alleged that he conducted social activities for current residents and patients only at Meadowview. Exhibit "A", ¶ 15. The only inference that can be drawn from this allegation is that any instrumentalities or tools required for Plaintiff to perform his job had a nexus with this location, and not with Premier. Accordingly, this factor must weigh in favor of a determination that Premier was not Plaintiff's employer.

From these same allegations, it is apparent that the location of Plaintiff's work was solely at Meadowview's facility. In fact, the Complaint is specifically tailored to place great emphasis on the location of Plaintiff's work at Meadowview, located at 9209 Ridge Pike, Philadelphia, PA 19128, and excursions from that location. Exhibit "A", ¶¶ 14-16. The only address associated with Premier is 199 Community Drive, Great Nek, NY 11021. Exhibit "A", ¶ 30. Plaintiff does not allege that any of his work took place at this location or had any other nexus whatsoever with

---

[1] The only allegations making reference to what Plaintiff's job involved are tailored to allege that some of Plaintiff's duties occurred in the City and County of Philadelphia, including walking residents across a street. Exhibit "A", ¶¶ 15-16.

Premier's location. Accordingly, this factor must weigh in favor of a determination that Premier was not Plaintiff's employer.

Plaintiff has failed to allege any relationship between himself and Premier or any employees of Premier, or allege a duration. While Plaintiff alleges generally that Premier was his employer, these are the exact type of conclusory legal statements that a court does not need to accept in considering whether Plaintiff has stated a claim. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Plaintiff does not allege or describe any interaction with Premier as a corporate entity, or any of Premier's agents, which could lead to a determination that any relationship existed. Plaintiff alleges that he had an employment relationship with Meadowview, and seeks to impute his relationship with Meadowview to Premier because Premier "owns and operates" his employer. Exhibit "A", ¶ 33. Taken most liberally, this allegation establishes only a corporate connection between Meadowview and Premier, not an employment relationship between Plaintiff and Premier. There is no relationship between Plaintiff or Premier of any duration alleged. This factor weighs in favor of a determination that Premier was not Plaintiff's employer.

The next factor is whether Premier had the right to assign additional projects to Plaintiff. Plaintiff has not alleged that Premier assigned him *any* projects, or had the right to assign him additional work. The only inference that can be drawn from the lack of these allegations is that Premier did not assign projects to Plaintiff, and did not have the right to assign him additional work. Plaintiff alleges that Mr. Chapman, a Meadowview employee, was Plaintiff's supervisor. Exhibit "A", ¶ 50. Plaintiff does not identify any interaction with Premier or Premier employees that establish that he was supervised by Premier. Accordingly, this factor weighs in favor of a determination that Premier was not Plaintiff's employer.

The next factor is whether Plaintiff had discretion over whether and how long to work. The Complaint contains no allegations regarding Plaintiff's discretion in this regard, or allegations that Premier in any way did, or had the ability to, direct Plaintiff on whether and how long to work. Plaintiff has not alleged that Premier controlled his working hours, any communications from Premier to that effect, or any other circumstances that could lead to an inference that Premier controlled when Plaintiff worked. Accordingly, this factor weighs in favor of a determination that Premier was not Plaintiff's employer.

The next factor is the method by which Plaintiff was paid. "The employer name listed on the Plaintiff's paycheck was, at all times relevant hereto, 'Rest Haven Nursing Center (Whitemarsh), Inc.'"[2] Exhibit "A", ¶ 19. Premier did not pay Plaintiff. This factor weighs in favor of a determination that Premier was not Plaintiff's employer.

In regard to the next factor, whether Plaintiff had the right to hire assistants, Plaintiff has failed to make any allegations from which the Court could make any inference. There are simply no allegations in the Complaint in regard to this factor. As Plaintiff has failed to make any allegations in regard to this factor, it should weigh in favor of a determination that Premier was not Plaintiff's employer.

The next factors are whether Plaintiff's job was part of the regular business of the hiring party and whether Premier was "in business". As discussed above, Plaintiff was the Activities Director for Meadowview, whose job involved conducting social activities for current residents and patients. In regard to Premier, Plaintiff alleges only that Premier "owns and operates [Meadowview] and five (5) other nursing and/or rehabilitation facilities." Exhibit "A", ¶ 33. Premier – Premier Healthcare Management, LLC – is a management company. From the

---

[2] "[W]hich was the prior name of Meadowview Rehabilitation and Nursing Center." Exhibit "A", ¶ 17.

allegations in the Complaint, the only inference that be drawn in regard to Premier's business is that it is in the business of "owning and operat[ing]" and "managing" nursing or rehabilitation facilities. The Complaint is devoid of any allegations suggesting that directing social activities, or any activities, at the individual nursing or rehabilitation facilities was part of Premier's regular business. To the contrary, the Complaint makes it clear that Premier's regular business was solely administrative management: (1) Premier handled contractual employment agreements; (2) Premier reserved the right to approve hiring of employee relatives; (3) Premier handled appeals of reasonable accommodation requests; (4) Premier issued an employee handbook; (5) Premier was responsible for tax filings. Exhibit "A", ¶¶ 29, 32. These rights or duties of Premier are far removed from nursing, rehabilitation, or directing social activities. Premier was not in the business of directing or controlling nursing, rehabilitation, or social activities. Accordingly, these factors should weigh in favor a determination that Premier was not Plaintiff's employer.

The next factor is whether Premier was responsible for the provision of Plaintiff's employee benefits. Plaintiff has not pled that Premier was responsible for the provision of Plaintiff's benefits. Accordingly, this factor weighs in favor of a determination that Premier was not Plaintiff's employer.

The final factor is the tax treatment of Plaintiff. Plaintiff alleges that 199 Community Drive, Great Neck, NY 11021 was listed on his IRS Form W-2. This is the address for Premier. However, this factor cannot weigh in favor of Plaintiff as this factor is primarily considered to distinguish between a contractor being paid via IRS Form 1099, and an employee whose taxes are withheld via an IRS Form W-2. Plaintiff admits that his paychecks were issued by "Rest Haven Nursing Center (Whitemarsh), Inc." ("which is the prior name of Meadowview Rehabilitation and Nursing Center). Exhibit "A", ¶¶ 17, 19. A reasonable inference this Court could draw from Plaintiff's

paycheck being issued by Meadowview, and tax status on his IRS Form W-2, is that Premier handles administrative management company duties relating to taxes on behalf of companies that it "owns and operates". Plaintiff was not issued a 1099 because he was not an independent contractor for either Meadowview or Premier – he was paid by Meadowview because he was Meadowview's employee and Premier is responsible for Meadowview's tax filings. If this is the inference drawn from the allegations in the Complaint, then the tax treatment of Plaintiff does not weigh in favor of a determination that Premier was Plaintiff's employer.

In considering the Darden factors, they weigh overwhelmingly in favor of a determination that Premier was not Plaintiff's employer. On a more fundamental level, Plaintiff has failed to sufficiently plead facts meant to address the Darden factors from which the Court could draw an inference that Premier was Plaintiff's employer. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  As an employment relationship is necessary for all of Plaintiff's asserted causes of action, Premier respectfully requests that the Complaint be dismissed with prejudice in its entirety as to Premier.

   3. **Plaintiff's Allegations are Insufficient to Breach the Corporate Veil**

Plaintiff's allegations are set forth in a manner seeking to pierce the corporate veil between Premier and Meadowview because Premier "owns and operates" Meadowview. Exhibit "A", ¶ 33. Plaintiff seeks to impute liability on Premier based on the bald allegation that "Premier Healthcare Management, LLC, [is] vicariously liable for the conduct of Mr. Chapman because Mr. Chapman was Doe's supervisor, was the Nursing Home Administrator ("NHA") with supervisory authority over the entire Meadowview facility, and took tangible employment action against Plaintiff in the form of discharge." Exhibit "A", ¶ 85. In short, Plaintiff asks this Court to impute any alleged

liability upon Premier simply by virtue of the allegation that Premier owns and operates Meadowview. There are no allegations that Premier or its employees were involved in the underlying substantive allegations of discrimination.

"There is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Indus., Inc. v. Aultman, 543 Pa. 38, 669 A.2d 893, 895 (Pa. 1995). When considering Pennsylvania law, the Third Circuit has directed "any court [to] start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967). Pennsylvania has rejected attempts to disregard the corporate form "outside traditional attempts to impose liability on shareholders." A survey by the Court of Appeals found that the Pennsylvania Supreme Court has frequently refused to disregard the corporate form between parent and subsidiary corporations. See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 353 (3d Cir. 2001) (collecting cases). To disregard the corporate form, the following factors are considered: (1) undercapitalization; (2) failure to adhere to corporate formalities; (3) substantial intermingling of corporate and personal affairs, and; (4) use of the corporate form to perpetrate a fraud or justify wrong. Lumax, 669 A.2d at 895. (citing Dept. of Envt'l Res. V. Peggs Run Coal Co., 423 A.2d 765 (Pa.Cmwlth. 1980)); see also Sams v. Redevelopment Auth. Of City of New Kensington, 244 A.2d 779, 781 (Pa. 1968).

The Complaint is devoid of any allegations of undercapitalization, failure to adhere to corporate formalities, intermingling of corporate and person affairs, or allegations that Premier or Meadowview are separate corporations to perpetrate a fraud or justify wrong. The Complaint does not allege that Premier or its employees, engaged in any manner in the discrimination alleged to have stemmed from the conduct of Mr. Chapman. Nor does the Complaint allege that Premier's

non-existent involvement in the underlying allegations of discrimination were undertaken in a manner meant to abuse the corporate form. Plaintiff simply alleges that Premier should be liable for Mr. Chapman's conduct based on it owning and operating Meadowview. This is an impermissible and wholly unsubstantiated attempt to breach the corporate veil without any of the necessary pleading requirements.

As all of Plaintiff's asserted causes of action seek only to attach liability to Premier by breaching the corporate veil, Premier respectfully requests that the Complaint be dismissed with prejudice in its entirety as to Premier.

### 4. Supplemental Jurisdiction over Plaintiff's NYSHRL Claims

For the reasons set forth in Co-Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint, and for the reasons stated in this Memorandum of Law, Plaintiff's NYSHRL claims should be dismissed with prejudice for failure to state a claim.

However, if Plaintiff's NYSHRL claims remain in the event Plaintiff's federal causes of action are dismissed, Premier moves this Court to decline exercising supplemental jurisdiction over these New York state law claims – Counts X and XI of the Complaint.

"Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if: "(1) the state law claims raise novel or complex issues, (2) the state law claims substantially predominate over the federal claim, (3) it has dismissed all of the federal claims, or (4) if there are other compelling reasons for declining jurisdiction." Smith v. Jones, Gregg, Creehan & Gerace, LLP., 2008 U.S.Dist. LEXIS 98530, *26 (W.D.Pa. Dec. 5, 2008).

If Plaintiff's federal causes of action are dismissed, 28 U.S.C. § 1367(c) permits remand of Plaintiff's NYSHRL claims. The Complaint states that Premier is a corporation organized and existing under the laws of the State of New York, with an address of 199 Community Drive, Great

Neck, NY 11021. Exhibit "A", ¶ 30. Premier is not alleged to have any involvement in the underlying substantive allegations of discrimination in the Complaint. To the extent that Plaintiff's NYSHRL claims remain (and Premier submits they should not), Premier has a greater interest in defending against those claims in the state that has promulgated those laws and the same state under in which Premier is incorporated than Plaintiff or Pennsylvania does in entertaining New York State claims in a Pennsylvania Federal District Court.

## IV.     CONCLUSION

Based on the foregoing, Defendant Premier Healthcare Management, LLC requests that the Complaint be dismissed with prejudice. If Plaintiff's NYSHRL claims remain, Defendant requests that this Court decline to exercise supplemental jurisdiction over those claims.

Respectfully submitted,

**JACKSON LEWIS P.C.**

s/ Marjorie Kaye, Jr.
Marjorie Kaye, Jr. (PA #315093)
J. Michael Nolan III (PA #317001)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA  19102
T: (267) 319-7802
F: (215) 399-2249
KayeM@jackonlewis.com
J.Michael.Nolan@jacksonlewis.com

Dated: June 30, 2016

**ATTORNEYS FOR DEFENDANT PREMIER HEALTHCARE MANAGEMENT, LLC**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of Defendant Premier Healthcare Management, LLC's Motion to Dismiss Plaintiff's Complaint and supporting papers were served through the Court's ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

**JACKSON LEWIS P.C.**

s/ Marjorie Kaye, Jr.
Marjorie Kaye, Jr. (PA #315093)
J. Michael Nolan III (PA #317001)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA  19102
T: (267) 319-7802
F: (215) 399-2249
KayeM@jackonlewis.com
J.Michael.Nolan@jacksonlewis.com

Dated: June 30, 2016

**ATTORNEYS FOR DEFENDANT PREMIER HEALTHCARE MANAGEMENT, LLC**

4836-7817-9659, v. 2